UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DONALD AVERSA,

                    Plaintiff,

           - against -

ANDREW SAUL,[1] Commissioner of Social
Security,

                    Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-6839 (PKC)

PAMELA K. CHEN, United States District Judge:

       Plaintiff Donald Aversa commenced this action under 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") that denied his claim for Disability Insurance Benefits ("DIB"). Before the Court are the parties' cross-motions for judgment on the pleadings or summary judgment. (Dkts. 10, 13.) For the reasons set forth below, the Court grants Plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for judgment on the pleadings. This case is remanded for further proceedings consistent with this Memorandum & Order.

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is automatically substituted as the Defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is respectfully directed to update the docket accordingly.

**BACKGROUND**

**I.     Procedural History**

On March 16, 2015, Plaintiff filed an application for DIB, in which he alleged he had been disabled as of May 25, 2012. (Administrative Transcript ("Tr."), Dkt. 8, at 196.) His application was denied. (*Id.* at 124–27.) After requesting a hearing (*id.* at 136), Plaintiff appeared before Administrative Law Judge Michael Carr (the "ALJ") on August 15, 2017 (*id.* at 15, 26). In a decision dated November 28, 2017, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to DIB. (*Id.* at 15−26.) Thereafter, Plaintiff requested review of the ALJ's decision, and the SSA declined that request on October 11, 2018. (*Id.* at 1–5.) Plaintiff timely[2] filed the instant action. (*See generally* Complaint, Dkt. 1.)

**II.    The ALJ Decision**

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines

---

[2] Title 42, United States Code, Section 405(g) provides that

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)). Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on October 16, 2018. Plaintiff filed the instant action on November 30, 2018—45 days later—making this action timely. (*See generally* Complaint, Dkt. 1.)

whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 25, 2012, and that Plaintiff suffered from the following severe impairments: "mild degenerative disc disease[3] of the lumbar spine, asthma,[4] chronic obstructive pulmonary disease (COPD),[5] emphysema,[6] gastroesophageal reflux disease (GERD),[7] sinusitis,[8] and sleep disorder." (Tr. at 18.)

Having determined that Plaintiff satisfied his burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments

---

[3] Degenerative disc disease is "[d]eterioration of the spinal column." *Crowley v. Barnhart*, 220 F. Supp. 2d 176, 179 n.7 (W.D.N.Y. 2002) (citing *Stedman's Medical Dictionary* 369 (5th ed.1982)) (internal quotation marks omitted).

[4] "Asthma is a physiological disorder or condition that affects the respiratory system." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994).

[5] "COPD is a lung disease that makes it hard to breathe." *Alford v. Turbine Airfoil Coating & Repair, LLC*, No. 12-CV-7539 (DLC), 2014 WL 1516336, at *2 (S.D.N.Y. Apr. 17, 2014).

[6] "Emphysema is a form of COPD." *Neri v. R.J. Reynolds Tobacco Co.*, 185 F. Supp. 2d 176, 180 n.3 (N.D.N.Y. 2001).

[7] "[GERD] is a common condition in which the gastric contents move up into the esophagus. The reflux becomes a disease when it causes frequent or severe symptoms or injury." *Cook v. Colvin*, No. 13-CV-1946 (TPG), 2015 WL 5155720, at *2 n.3 (S.D.N.Y. Sept. 2, 2015) (citation omitted).

[8] "Sinusitis is a condition in which the sinuses are infected or inflamed, producing mucus draining into the nose and sometimes causing congestion." *Gonzalez v. Wright*, 665 F. Supp. 2d 334, 338 (S.D.N.Y. 2009).

meet or equal the severity of one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. at 18.) Moving on to the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[9] to perform "light work" as defined in 20 C.F.R. § 404.1567(b).[10] (*Id.* at 20.) Qualifying his RFC determination, the ALJ noted that Plaintiff "can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl[;] . . . cannot climb ladders, ropes, and scaffolds[;] . . . can tolerate occasional exposure to fumes, odors, dust, gases, and other pulmonary irritants[;] . . . can tolerate occasional exposure to extreme cold and extreme heat." (*Id.*)

Relying on his RFC finding from step four, the ALJ determined that Plaintiff was unable to perform any of his past relevant work as a firefighter and tractor trailer truck driver. (*Id.* at 24.) The ALJ then proceeded to step five. At step five, the ALJ must determine whether the claimant—given his RFC, age, education, and work experience—has the capacity to perform other substantial

---

[9] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[10] According to the applicable regulations,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely: (1) mail clerk, which has an availability of 45,000 jobs; (2) marker,[11] which has an availability of 67,000 jobs; and (3) garment sorter, which has an availability of 54,000 jobs. (Tr. at 25.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

---

[11] A "marker" is defined under the applicable regulations as someone who "[m]arks and attaches price tickets to articles of merchandise to record price and identifying information . . . ." *Dictionary of Occupational Titles* 209.587-034, 1991 WL 671802.

**DISCUSSION**

Plaintiff argues that the ALJ erred by (1) applying an improper legal standard at the second step; (2) failing to obtain a medical expert opinion to determine whether the combined effect of all of Plaintiff's impairments meets or equals the severity of those impairments in the Listings; and (3) failing to recontact the treating physician and to accord proper weight to the treating physician's opinions. The Court addresses each argument in turn.

**I.    Combination of All Impairments at the Second Step**

Plaintiff argues that the ALJ applied an incorrect legal standard at the second step of the required analysis—*i.e.*, determining whether Plaintiff suffered from a "severe impairment," 20 C.F.R. § 404.1520(a)(4)(ii)—and failed to consider the combination of all of Plaintiff's impairments and particularly his diaphragmatic hernia, diverticulosis, and internal hemorrhoids.[12] The Court disagrees.

"Where an ALJ excludes certain impairments from the list of severe impairments at the second step, any such error is harmless where the ALJ identifies other severe impairments such that the analysis proceeds and the ALJ considers the effects of the omitted impairments during subsequent steps." *Calixte v. Colvin*, No. 14-CV-5654 (MKB), 2016 WL 1306533, at *23 (E.D.N.Y. Mar. 31, 2016). "Nevertheless, where an ALJ's exclusion of an impairment from the list of severe impairments is not supported by substantial evidence, and the ALJ fails to account for functional limitations associated with the excluded impairment in determining the claimant's

---

[12] Plaintiff also references a right inguinal herniorrhaphy he underwent on February 18, 2015. The ALJ determined that Plaintiff's post-inguinal hernia surgery status was not a severe impairment, because "[t]here [was] no evidence of any ongoing complaints or complications following the hernia surgery." (Tr. at 18.) To the extent that Plaintiff challenges the ALJ's determination regarding the hernia surgery, the Court finds that the ALJ's determination is supported by substantial evidence.

RFC, remand for further administrative proceeding is appropriate." *Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *15 (E.D.N.Y. Sept. 28, 2017).

The Court finds no reversible error with regard to the ALJ's assessment of Plaintiff's impairments. The ALJ identified other severe impairments at the second step and proceeded through the sequential evaluation process. Although the ALJ did not mention Plaintiff's diaphragmatic hernia at the second step, the ALJ indicated at the fourth step that he considered "all symptoms" and specifically discussed the esophagus duodenoscopy that revealed the diaphragmatic hernia. (Tr. at 20−21.) Therefore, any error in failing to list the diaphragmatic hernia as a severe impairment at the second step was harmless. *See Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (summary order) (finding remand unwarranted when the ALJ made clear that for the fourth step, he considered the "combination of impairments" and the combined effect of "all symptoms"); *McAllister v. Colvin*, 205 F. Supp. 3d 314, 326 (E.D.N.Y. 2016) (finding no reversible error where the ALJ proceeded to the fourth step and considered the "entire record").

As for the rest of the tests that Plaintiff points to, there is nothing in the record to suggest that those issues had more than a minimal effect on his ability to work. Plaintiff cites to a CT scan of his lungs showing "two small blebs with slightly thickened wall in the right upper lobe posterior to the right mainstem bronchus" (Tr. at 558), but Plaintiff does not identify in any way how the presence of this abnormality had an effect on his ability to work. Similarly, although the ALJ failed to reference in his decision Plaintiff's two colonoscopies showing diverticulosis[13] and hemorrhoids (*id.* at 373, 735), the accompanying medical records do not establish that those

---

[13] "Diverticulosis comes about when small pouches in the colon fill with food and become infected; the condition is treated through diet." *Robinson v. Edwards*, No. 04-CV-2804 (PAC), 2006 WL 1889900, at *5 (S.D.N.Y. July 5, 2006).

conditions impaired Plaintiff's ability to work in any way. In fact, no medication plan was provided in the first colonoscopy report (*id.* at 373), and only a high-fiber diet and follow-up colonoscopy in five years were prescribed in the second report (*id.* at 735). "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Paz v. Comm'r of Soc. Sec.*, No. 14-CV-6885 (MKB), 2016 WL 1306534, at *13 (E.D.N.Y. Mar. 31, 2016) (internal quotation marks and citation omitted). Therefore, it was proper for the ALJ to exclude these issues from his findings regarding Plaintiff's severe impairments. *See Gagovits v. Colvin*, No. 15-CV-3246 (JS), 2016 WL 4491537, at *8 (E.D.N.Y. Aug. 25, 2016) (finding that the ALJ's failure to discuss sleep apnea at the second step was supported by substantial evidence because there was no record establishing that sleep apnea had more than a minimal effect on the plaintiff's ability to work); *Jackson v. Astrue*, No. 08-CV-1437 (CFD) (TPS), 2010 WL 2585037, at *2 (D. Conn. June 23, 2010) (finding it proper for the ALJ to exclude seasonal allergies from his findings, when the documents did not explain whether the seasonal allergies were severe).

## II.    Failure to Obtain a Medical Expert for the Third Step

With respect to the ALJ's analysis at the third step—determining whether any of Plaintiff's impairments met or equaled the severity of the impairments in the Listings—Plaintiff does not identify a particular impairment in the Listing that any of his impairments meets or equals in severity. Instead, Plaintiff argues that the ALJ should have considered the combined effects of all of Plaintiff's impairments and should have obtained medical expert testimony to ascertain whether the severity of the combined impairments met or equaled the severity of an impairment in the Listings. The Court again disagrees.

"No binding authority requires the ALJ to: (a) provide a discussion of considerations concerning [the claimant's] combined impairments and medical equivalence; or (b) obtain medical expert testimony in order to ascertain whether the combination of [the claimant's] impairments equaled any listing(s)." *Cawley v. Berryhill*, No. 17-CV-4651 (KNF), 2018 WL 3677879, at *5 (S.D.N.Y. Aug. 2, 2018) (internal quotation marks omitted); *see also Rivera v. Comm'r of Soc. Sec.*, No. 15-CV-8439 (GBD) (HBP), 2017 WL 120974, at *10 (S.D.N.Y. Jan. 12, 2017) ("An ALJ is not required to consult a medical expert to determine whether a plaintiff meets a listing."), *report and recommendation adopted*, No. 15-CV-8439 (GBD) (HBP), 2017 WL 946296 (S.D.N.Y. Mar. 9, 2017). The relevant regulations contain permissive language and provide that "[a]t the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) *may* ask for and consider the opinion of a medical or psychological expert concerning whether [the claimant's] impairment(s) could reasonably be expected to produce [the claimant's] alleged symptoms." 20 C.F.R. § 404.1529(b) (emphasis added).

Plaintiff does not cite to any binding or persuasive authority that requires the ALJ to enlist a medical expert to opine on the combined effect of Plaintiff's impairments. The relevant authority cited by Plaintiff permits, but does not mandate, solicitation and consideration of medical expert opinion. *See* SSR 17-2P, 2017 WL 3928306, at *3 (Mar. 27, 2017) ("To assist in evaluating this issue, adjudicators at the hearings level *may* ask for and consider evidence from medical experts (ME) about the individual's impairment(s), such as the nature and severity of the impairment(s)." (emphasis added)); *see also* HALLEX I-2-6-70, 1993 WL 751901 ("When an administrative law judge (ALJ) determines that the testimony of a medical expert (ME) is needed at a hearing, the ALJ must . . . [r]equest that the ME examine any pertinent evidence received between the time the ME completed the case study and the time of the hearing."). Additionally, "Plaintiff offers no

9

explanation as to how such consideration [of the combination of impairments] would have even arguably changed the ALJ's decision." *Van Orden v. Astrue*, No. 09-CV-81 (GLS) (VEB), 2010 WL 841103, at *5 (N.D.N.Y. Mar. 11, 2010) (rejecting similar arguments). Therefore, the Court does not find remand necessary on this basis.

III.    **Failure to Properly Consider and Clarify the Treating Physician's Opinions**

Plaintiff argues that the ALJ: (1) should have contacted his treating physician, Iwona Rawinis, M.D., after according little weight to her opinion that Plaintiff was disabled; and (2) accorded improper weight to Dr. Rawinis's opinions. Here, the Court agrees with Plaintiff.

"With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[14] *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks, brackets, and citations omitted). As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks, brackets, and citations omitted).

---

[14] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on August 7, 2014, as the current regulations only "apply to cases filed on or after March 27, 2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); *see also* 20 C.F.R. § 404.1520(c).

10

"Before the ALJ can disregard a treating physician's medical opinion, the ALJ must first ask the treating physician to clarify the deficiencies the ALJ perceives in that opinion." *Austin v. Comm'r of Soc. Sec.*, No. 18-CV-331 (PKC), 2019 WL 4751808, at *6 (E.D.N.Y. Sept. 30, 2019) (citation omitted). "[T]he ALJ must seek additional evidence or clarification when the report from [the] claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (internal quotation marks and brackets omitted); *see also Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) ("Legal errors regarding the duty to develop the record warrant remand." (collecting cases)).

Furthermore, while an ALJ is entitled to disregard the opinion of a claimant's treating physician after giving the physician the opportunity to correct the deficiencies in her medical reports, the ALJ must make clear that this decision is based on conclusions made by other medical professionals. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."); *Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010) ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error.").

Dr. Rawinis, Plaintiff's treating physician,[15] provided a letter on August 4, 2017 (Tr. at 785−87), and a pulmonary medical source statement on August 7, 2017 (*id.* at 778−84). The ALJ

---

[15] The parties do not dispute that the ALJ correctly identified Dr. Rawinis as Plaintiff's treating physician. (Defendant's Memorandum of Law, Dkt. 14, at 23; Plaintiff's Memorandum in Support, Dkt. 10-1, at 14.)

assigned limited weight to Dr. Rawinis's letter on the grounds that Dr. Rawinis had improperly opined on the ultimate legal conclusion of whether Plaintiff was disabled. (*Id.* at 23.) This was improper. "While a treating physician's legal conclusion of a claimant's RFC is entitled to no special significance, the same cannot be said for a treating physician's medical assessment of the patient's limitations." *Bradley v. Colvin*, 110 F. Supp. 3d 429, 444 (E.D.N.Y. 2015) (citations omitted). It is clear that Dr. Rawinis's opinion regarding Plaintiff's frequent exacerbations and serious sensitivity to environmental factors and pulmonary irritants (Tr. at 787) were in no way legal conclusions reserved to the Commissioner. The ALJ should have explained why he did not credit Dr. Rawinis's opinion. *See Sanchez v. Colvin*, No. 14-CV-4939 (PKC), 2015 WL 5774853, at *8 (E.D.N.Y. Sept. 30, 2015) ("Though it was not error for the ALJ to disregard [the treating physician's] opinion that Plaintiff was disabled, the ALJ should have explained why her opinion was not credited."). If the ALJ perceives any deficiencies in the opinion, the ALJ must first ask Dr. Rawinis to clarify the deficiencies before disregarding her opinion. *See Austin*, 2019 WL 4751808, at *6. Therefore, the Court finds error in the ALJ's failure to explain the reasons why Dr. Rawinis's opinion was not given controlling weight. *See Sanchez*, 2015 WL 5774853, at *8 (remanding when the ALJ disregarded the treating physician's opinion on the basis that the physician found the claimant was disabled).

With respect to Dr. Rawinis's pulmonary medical source statement, the ALJ disregarded that opinion because the doctor "[did] not have a basis in the medical evidence submitted, and [her statement] contradict[ed] the evidence." (Tr. at 23.) Once the ALJ concluded that Dr. Rawinis's statement contained deficiencies, the ALJ was obligated to "seek clarification and additional information from [Dr. Rawinis] to fill any clear gaps before dismissing the doctor's opinion." *Calzada*, 753 F. Supp. 2d at 269. In other words, if the ALJ wanted to disregard Dr. Rawinis's

medical opinion, the ALJ needed to first ask Dr. Rawinis to clarify the deficiencies that the ALJ perceived in the opinion.

Additionally, while the ALJ may disregard Dr. Rawinis's opinions, he must make clear that his decision is based on conclusions made by other medical professionals. Dr. Rawinis stated in the pulmonary medical source statement that Plaintiff "should not have any exposure to any pulmonary irritants, including all gases, fumes, and odors." (Tr. at 23.) The ALJ reasoned that Dr. Rawinis's opinion contradicted the evidence because Plaintiff "continued to smoke . . . and thus was able to tolerate directly inhaled fumes, odors, and gases[,]" and Plaintiff's tests and exams "show[ed] that [his] respiratory disorders are mild." (*Id.*) This is highly improper because the ALJ "substitute[d] his own expertise or view of the medical proof for" those of a medical professional. *Greek*, 802 F.3d at 375; *see also Indelicato v. Colvin*, No. 13-CV-4553 (JG), 2014 WL 674395, at *3 (E.D.N.Y. Feb. 21, 2014) (noting that "an ALJ is not a doctor, and therefore is not equipped to make medical judgments"). Therefore, the Court finds that the ALJ's rejection of Dr. Rawinis's opinion is not supported by substantial evidence. *See Whittier v. Comm'r of Soc. Sec.*, No. 18-CV-4142 (PKC), 2019 WL 3451734, at *3 (E.D.N.Y. July 31, 2019) (remanding on the grounds that the ALJ's rejection of the treating physician's opinion was not supported by substantial evidence).

In sum, the Court holds that remand is required to allow proper consideration of Dr. Rawinis's opinions and to enable the ALJ to obtain clarification to determine whether Dr. Rawinis's opinions are entitled to controlling weight. *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("[W]here we are unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ, we will not hesitate to remand for further findings or a clearer explanation for the decision."

(quotations omitted)). Although Dr. Rawinis's medical opinions were not "[themselves] determinative," her opinions were entitled to "controlling weight" so long as the ALJ had enough information to determine that they were "well supported by medically acceptable clinical and laboratory diagnostic techniques and [] not inconsistent with the other substantial evidence." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (internal quotation marks, citations, and ellipsis omitted)).

If, after soliciting the necessary information from Dr. Rawinis on remand, the ALJ determines that her opinions are still entitled to little weight, he must adduce evidence from a medical professional to support that conclusion. *See Greek*, 802 F.3d at 375. In doing so, the ALJ should keep in mind that he "may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Mayor v. Colvin*, No. 15-CV-344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015); *see also Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (noting that the ALJ is free to give greater weight to consultative medical examiners' opinions so long as the ALJ documents his rationale for finding the relevant standards met).

## CONCLUSION

For the reasons set forth above, the Court denies the Commissioner's cross-motion for judgment on the pleadings and grants Plaintiff's motion for summary judgment. The Commissioner's decision is remanded for further consideration and new findings consistent with

this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: January 7, 2020
      Brooklyn, New York